**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SOUTH CENTRAL TELEPHONE ASSOCIATION, Inc., Respondent.**

**No. 9714.**

United States Court of Appeals
Tenth Circuit.

July 10, 1968.

Burton Raimi, Atty., National Labor Relations Board (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Paul J. Spielberg, Atty., National Labor Relations Board, on the brief), for petitioner.

Marvin J. Martin, Wichita, Kan. (W. Stanley Churchill, Wichita, Kan., and W. Luke Chapin, Medicine Lodge, Kan., with him on the brief), for respondent.

Before MURRAH, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge,* and BREITENSTEIN, Circuit Judge.

## PER CURIAM:

South Central Telephone Association is a membership company with several exchanges in Kansas and Oklahoma. It has 350 members who elect a board of directors which hires and discharges employees and fixes their compensation. The company has a manager with very limited authority; he may purchase an item costing not more than $75 or any item that is purchased monthly, but may not give an employee a raise in pay.

One Howard Ellis was employed by the company on March 1, 1964, as a serviceman and was assigned to one of the company's three service areas. In the spring of 1965 he asked Hilliard, the company manager, for a raise, which the board of directors refused to grant. On August 27, 1965, Ellis tendered his resignation to Hilliard, stating that he "couldn't make it on the present salary he was getting" and that he was going to have to leave. Hilliard reported the tendered resignation to the board of directors, which authorized him to employ a replacement. Pursuant to that authority, Hilliard hired one Billy Young as the replacement for Ellis.

At its regular meeting on October 18, 1965, the board was advised by the director for the area serviced by Ellis that he had received complaints about Ellis's financial matters, "of his apparent carelessness in caring for his accounts, financial obligations there in the community." Certain creditors, said the director, who had heard that Ellis was leaving were anxious about their accounts. This is consistent with Ellis's statement that he could not make it on his present salary.

In September, 1965, Ellis was unsuccessful in his efforts to get other employment and told Hilliard he had decided to stay. The board knew nothing of this. Some time in October Ellis obtained from a union organizer authorization cards which he and Young and the other two servicemen, Cooke and Mize, signed. On October 25 the union wrote the company that it represented a majority of its clerical and plant employees and demanded recognition as bargaining agent. The company expressed doubt as to the majority and suggested a Labor Board election, which was held December 15. The result of the election does not appear in the record.

At its regular meeting on November 15, the board of directors again discussed Ellis's bad credit standing and was informed he had been using the company truck for personal errands and that he had been charging personal toll calls to the company. For these reasons the board then decided to accept Ellis's resignation as of a date to be set by Hilliard, which the latter fixed as December 1.

On complaint of the union, the General Counsel charged the company with several violations of the Labor Management

---

\* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

Relations Act, 1947, 29 U.S.C. §§ 158(a) (1) and 158(a) (3). At a hearing before a trial examiner, it appeared that Mize, one of the servicemen, in a telephone conversation with Hilliard was asked the reason for the union and said mainly wages, retirement plan and insurance. Hilliard said, "Well, a lot of times these unions come in and they will promise you a lot of things but they are really going to feather their hat out of your pocketbook." In a second conversation between Mize and Hilliard, with a director present, Mize testified that Hilliard said "something about we would lose this family thing, we are a small company and you lose something when you go union." Hilliard also allegedly stated "we would be expected to go to work at 8 and have an hour for dinner and go home at 5 at night and not—leave the truck at the office like Bell [Telephone Company] is expected to do. It would have to be run more like a company instead of a family organization."

Serviceman Gue Cooke was also interviewed by Hilliard and Mills, president of the board of directors. A similar comparison with Bell was made and it was pointed out that Bell just paid one-third of the Blue Cross-Blue Shield, where South Ceneral paid one-half. Mills also asked which Cooke would rather have. Mills also allegedly said that if they went union, they might lose some benefits like having time off for funerals.

The trial examiner found the company violated Section 8(a) (1) of the Act by coercively interrogating Mize about his union affiliation and activities, and by threatening employees with reprisals for engaging in protected activities. The examiner also found the company discharged Ellis because of his union activities [1] and so violated Sections 8(a) (1) and 8(a) (3) of the Act, and ordered his reinstatement with back pay. The usual notice was ordered. The Labor Board adopted the findings, conclusions and recommendations of the trial exam-

iner and has petitioned this court to enforce its order.

We have examined the record with care and have no difficulty in concluding that, considered as a whole, it does not support the Board's order. There was no coercive questioning of Mize about his union activities, nor was there any threat of reprisals against employees for engaging in protected activities. We think it clear from the record that the board of directors accepted the resignation of Ellis for the reasons discussed at its November 15 meeting, and not because of Ellis's union activity. In reaching a decision to the contrary, the trial examiner and the Labor Board chose to ignore the company's evidence and to conclude that, as Ellis had taken part in signing union authorization cards, his activity in that respect must have been the reason his resignation was accepted. This speculation is not supported by the record as a whole.

Enforcement denied.

---

1. He refused to permit the president of the company to deny under oath that Ellis had been discharged for union activities.